**CITIBANK, N.A., Plaintiff,**

**v.**

**BEARCAT TIRE, A.G., et al., Defendants.**

**No. 82 C 4298.**

United States District Court, N.D. Illinois, E.D.

Nov. 3, 1982.

Sara J. Gourley, Shalom L. Kohn, Sidley & Austin, Chicago, Ill., for plaintiff.

James E. Doroshow, Berman, Fagel, Haber, Maragos & Abrams, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In this diversity action Citibank, N.A. ("Citibank") has sued Bearcat Tire, A.G. ("Bearcat"), Jordan Fishman ("Fishman") and Louis Fishman & Co. ("Company"). Citibank alleges Bearcat defaulted on a promissory note (the "Note") (Count I), Fishman defaulted on a personal guaranty of the Note (Count II) and Bearcat transferred borrowed funds to Company in fraud of Bearcat's creditor Citibank (Count III). This Court's August 24, 1982 Order (the "Order") granted Citibank a judgment by confession against Bearcat. Bearcat has moved under Fed.R.Civ.P. ("Rule") 59(e) to "vacate, alter or amend" that judgment. Fishman has moved for dismissal under Rule 12(b)(6).[1] For the reasons stated in this memorandum opinion and order, both Bearcat's and Fishman's motions are denied.

### Facts [2]

In January 1982 Bearcat executed and delivered to Citibank the Note in the principal amount of $551,282, consolidating and renewing five previous demand notes (the "previous notes").[3] After making several payments of principal and interest on the Note, Bearcat tendered a payment by a check then returned for insufficient funds. Since May Bearcat has made no further payments on the Note despite Citibank's demand.

By an instrument (the "Guaranty") executed contemporaneously with the Note, Fishman personally guaranteed payment of the Note to Citibank. Fishman has failed

1. Company initially also moved for dismissal but later withdrew its motion (R. Mem. 6).

2. As usual on a motion to dismiss, the allegations of Citibank's First Amended Complaint (the "Complaint") are taken as true and are construed in the light most favorable to Citibank. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). As for the Rule 59(e) motion, the facts are undisputed with the one exception stated later in the text.

3. Bearcat was in default on the previous notes (executed in July, August and September 1981) when it executed the Note to consolidate them.

to make any payments pursuant to the Guaranty despite Citibank's demand.[4]

In accordance with the Note's confession of judgment clause, Citibank designated an attorney to appear for Bearcat before this Court. On Citibank's motion judgment was confessed via the Order in the sum of $462,-884.17 (representing $416,281.99 in principal amount, $42,202.18 in interest, and $4,400 in attorneys' fees).

### Bearcat's Rule 59(e) Motion

Adoption of Rule 59(e) confirmed this Court's inherent power to alter or amend its judgments. *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 449–51, 102 S.Ct. 1162, 1165–66, 71 L.Ed.2d 325 (1982).[5] Motions under Rule 59 are addressed to this Court's sound discretion. *See* 6A Moore, *Federal Practice* § 59.05[5], at 59–73 (1982). As with similar Rule 60(b) motions, a Rule 59(e) motion will be granted if the movant makes a "proper showing" of the grounds for relief. *Cf. Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 795 (7th Cir.1980) (discussing Rule 60(b)).

Though a Rule 59(e) motion apparently may raise any ground in its claim for relief, the motion itself should state its grounds with the particularity required by Rule 7(b)(1). *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir.1977).[6] Bearcat's motion is not as precise as *Martinez* may require, but in sum Bearcat claims:

1. It executed the Note under duress.

2. Judgment was confessed by a member of the same law firm that prepared the Note and that represents Citibank in this action.

3. Citibank's judgment was excessive. It would not be hyperbolic to term those "grounds" frivolous.

Citibank accompanied its Complaint with documentary evidence and its motion for judgment with affidavits. Bearcat has not contested the authenticity of Citibank's documents, and it has not tendered any factual showing of its own.[7]

Bearcat's latter two arguments scarcely merit discussion. First, the Note (at 2) specifically allows Citibank to designate "any attorney" to confess judgment, and Illinois courts[8] have squarely held con-

---

**4.** In August 1981 Fishman had executed a guaranty ("the earlier guaranty") in connection with the previous notes. Fishman was in default on the earlier guaranty when he executed the Guaranty.

**5.** Rule 59(e) does not speak in terms of this Court's power to *vacate* its judgments, but that power is well established. *See* 11 Wright & Miller, *Federal Practice and Procedure* § 2817, at 111 (1973).

**6.** Illinois' practice rule (Ill.Rev.Stat. ch. 110 A, § 276, "Rule 276") specifies only one basis for "opening" a judgment by confession: A movant must disclose a *prima facie* defense on the merits to the claim upon which judgment was confessed. From the Federal Rules' perspective, Rule 59(e) (unlike Rule 60(b)) does not specify what grounds might support a motion. *See also* Rule 55(c); 10 Wright & Miller § 2692, at 300–01 (1973). It might be argued Rule 59(e) does not cover the matter of permissible grounds, so *Erie v. Tompkins* principles would determine whether state or federal law should decide that issue. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–53, 100 S.Ct. 1978, 1984–1986, 64 L.Ed.2d 659 (1980); *Hanna v. Plumer,* 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965); 19 Wright & Miller

§ 4510, at 164 (1982). Here, if *Erie* dictated application of Illinois law on this matter, Bearcat could not base its Rule 59(e) motion on any ground not going to an alleged meritorious defense to Citibank's claim against it. Because none of Bearcat's grounds is persuasive, however, this Court does not face the *Erie* issue that might be posed by the existence of a persuasive ground able to be asserted under Rule 59(e) "procedure" but not under Rule 276 (if *it* governed as "substantive").

**7.** Rule 276 specifically requires affidavit evidence when moving in Illinois courts for the opening of a judgment by confession. Although Rule 59(e) does not require, it certainly permits, submission of affidavits. *See* 6A Moore § 59.12[3], at 59–253 to –254.

**8.** In capital letters the Note read (at 2):
THIS PROMISSORY NOTE SHALL BE DEEMED TO HAVE BEEN MADE AT CHICAGO, ILLINOIS, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS AND DECISIONS OF THE STATE OF ILLINOIS.
Understandably the parties' memoranda have argued Illinois substantive law. *Klaxon Co. v.*

fession of judgment by an attorney of the same firm as plaintiff's counsel does not invalidate the judgment. *Gecht v. Suson*, 3 Ill.App.3d 183, 188, 278 N.E.2d 193, 196 (1st Dist.1971). Second, Bearcat calculates the judgment "excess" by adding the judgment principal amount to Bearcat's admitted payments to Citibank, arriving at a sum greater than the Note's face amount. But Bearcat's payments had of course included both principal and interest, so they obviously did not reduce the Note's face amount dollar for dollar. Bearcat has not cast any doubt on Citibank's affidavits establishing the amount due. It is frankly an affront for Bearcat to advance such a patently empty contention.

■ Bearcat's "economic duress" argument is only slightly better: It nearly attains the level of speciousness. In sum Bearcat says it executed the Note and the confession of judgment under threat of litigation over its default on the previous notes. Illinois clearly recognizes judgments by confession in nonconsumer transactions, however. Ill.Rev.Stat. ch. 110, § 2–1301(c) (1982). And Illinois courts do not find a one-to-one correlation between a creditor's exercise of a hard bargaining position and "duress" in the legal sense. *Cf. Higgins v. Brunswick Corp.*, 76 Ill.App.3d 273, 277–78, 32 Ill.Dec. 134, 138–139, 395 N.E.2d 81, 85–86 (1st Dist.1979) (no duress where lessee-creditor threatened financial ruin and legal action against lessor-debtor in lease negotiations).

But the obvious key to the poverty of Bearcat's position is its total silence as to any defense to its obligations on the previous notes. Thus the picture is one of a debtor in default of an admitted obligation on *demand* notes, availing itself of the creditor's willingness to consolidate those previous notes into a single note (the Note) providing for fixed installment payments and an acceleration clause. Bearcat clearly

obtained financial respite from Citibank's alleged "hard bargain." Bearcat's claim it had no "option or choice" when confronted with the Note distorts that concept. *Cf. Staren & Co. v. Shapiro*, 3 Ill.App.3d 417, 420, 279 N.E.2d 470, 472 (1st Dist. 1972) (economic duress "does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress," quoting *Joyce v. Year Investments, Inc.*, 45 Ill. App.2d 310, 314, 196 N.E.2d 24, 26 (1st Dist.1964)).

Bearcat also says, in apparent support of its claim of duress, it was not represented by counsel during the Note transaction. That is the one factual issue between the parties. Citibank has submitted a copy of a letter, in which an attorney (a partner in the firm representing all defendants in this action) returns to Citibank's counsel the Note and Guaranty, *both* executed by Fishman. To that submission Bearcat responds only (R. Mem. 2 n. 2) that the attorney represented Fishman, not Bearcat.

■ Both the Note and the attorney's forwarding letter (Exhibit A to this opinion) reflect Fishman's execution of the Note as Bearcat's Chairman and Managing Director. Nor does the letter contain the slightest hint of the distinction now asserted by Bearcat's counsel. Finally it should be said that lack of representation, even were that established in fact, also does not equate with "duress." Overreaching or substantive disadvantage to the unrepresented party must be shown, and it has not been. Thus any factual dispute is irrelevant in legal terms.

Frankly the types of arguments put forth on Bearcat's behalf are what give our common profession a bad name. Counsel's responsibility to represent clients zealously does *not* justify the submissions here. *See*

---

*Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) requires application of Illinois choice of law rules in this diversity action, but the parties' contractual choice of Illinois law obviates the need to make inquiry in that respect. Illinois' choice of law rules in

contract actions are in flux. *Compare Overseas Development Disc Corp. v. Sangamo Construction Co.*, 686 F.2d 498 at 510 n. 43 (7th Cir., 1982) *with International Paper Co. v. Grossman*, 541 F.Supp. 1236, 1239–40 (N.D.Ill. 1982).

ABA Code of Professional Responsibility EC 7–4 (1980) ("... a lawyer is not justified in asserting a position in litigation that is frivolous").

### Fishman's Motion

Fishman states two bases for avoiding liability under the Guaranty:

1. Fishman received no consideration for executing the Guaranty, rendering it non-binding.

2. Because the Guaranty purports to guarantee a preexisting debt without any consideration flowing to Fishman, it is void.

Both arguments[9] depend on Fishman's claim no consideration passed to him personally.

■ First year law school principles teach us that consideration, ample to support contract liability, may stem from *detriment* to the *promisee* rather than benefit to the promisor. *See* 1 Corbin, *Contracts* § 122, at 523–31 (1963); Restatement (Second) of Contracts § 71(3)(b), at 172 (1981). And there is no dispute that promisee Citibank, by forbearing from immediate action against its debtor (Bearcat) and guarantor (Fishman), both of whom were in current default under the previous notes and earlier guaranty, sustained such a detriment. That alone suffices to defeat Fishman's argument. But even on the narrower benefit-to-the-promisor test, Illinois law is squarely against Fishman's position.

Fishman signed the Note and the previous notes as "Managing Director" or "President." That position was reconfirmed by the attorney's letter (Exhibit A to this opinion). Fishman is scarcely a stranger to the Bearcat-Citibank transactions. Unlike an "accommodation guarantor," under Illinois law Fishman was a party deriving personal benefit (in the contract consideration sense) from the reprieve granted Bearcat. *See Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 84, 88, 172 N.E. 7, 9, 10 (1930) (directors' guaranty of note in consideration for extension of credit to corporate borrower); *State Bank v. Sentel*, 10 Ill.App.3d 86, 90, 293 N.E.2d 444, 447–48 (4th Dist.1973) (shareholders' and officers' notes in consideration for extension of credit to corporate borrowers); *National Bank & Trust Co. v. Becker*, 38 Ill.App.2d 307, 312, 187 N.E.2d 355, 357 (1st Dist.1962) (shareholders' guaranties in consideration for loans and renewals extended to corporate borrower).

Fishman has not contested that forbearance from suit represented adequate consideration to *Bearcat* (R. Mem. 5). But Illinois law teaches such forbearance, in the circumstances here, supports the guaranty as well. *See First National Bank of Red Bud v. Chapman*, 51 Ill.App.3d 738, 740, 9 Ill. Dec. 426, 429–430, 366 N.E.2d 937, 940–41 (1st Dist.1977); 1 Corbin § 144, at 625.[10]

■ Fishman raises one additional argument that does his cause little good—that the Guaranty is defective on its face because he guarantees loans to Beatcat Tire A.G. in which he has "no holdings or interest," Mem. 6, "not Bearcat Tire A.G." (R. Mem. 5).[11] Fishman's attempt to use a typographical error as a shield implicitly confirms he has the kind of interest in Bearcat that makes its consideration his.

What was said at the end of the preceding section is equally applicable here. True enough, both the Note and the Guaranty provide the creditor with interest to compensate for delays and attorneys' fees to reimburse for expenses. But the affront to the system goes uncompensated and un-

---

9. Fishman's second argument is really just a variant of the first. He does not claim (Mem. 6–7 and R. Mem. 6) there can never be a guaranty of a pre-existing debt.

10. In any case Citibank asserts (see n. 4) Fishman was in default on the earlier guaranty when he executed the Guaranty. If consideration had to flow to him *directly* in the Guaranty, it plainly did so. Moreover Fishman's Guaranty was part of the loan renewal transaction represented by the Note—it did not guarantee a "preexisting debt." *See Continental Nat'l Bank of Fort Worth v. Schiller*, 89 Ill.App.3d 216, 219–20, 44 Ill.Dec. 471, 474–475, 411 N.E.2d 593, 596–97 (3d Dist.1980).

11. Citibank missed (Ans. Mem. 7) this typographical-error argument, but it was worth missing.

reimbursed. Judgment on that score will be reserved to the end of the litigation.

### Conclusion

Bearcat's motion to alter, amend or vacate the judgment contained in the Order is denied. Fishman's motion to dismiss is also denied. Fishman is ordered to answer the Complaint on or before November 10, 1982.

EXHIBIT A

CHATZ, BERMAN, MARAGOS, HABER & FAGEL

ATTORNEYS AND COUNSELORS AT LAW

140 South Dearborn Street, 14th Floor, Chicago, Illinois 60603 ● 312/346–7500

January 29, 1982

VIA MESSENGER

H. Bruce Bernstein, Esq.
Sidley & Austin
One First National Plaza
Chicago, Illinois 60603

Re: *Bearcat Tire A.G./Citibank, N.A.*

Dear Bruce:

Enclosed please find Promissory Note in the principal amount of $551.282.00 as executed by Jordan Fishman, Chairman and Managing Director. I have also enclosed a Personal Guaranty.

Please call me should there be any further questions regarding this transaction.

Very truly yours,
/s/   Joel A. Haber
Joel A. Haber

JAH/drw
Enclosure